Xin Tian, Esq. (CA SBN: #363544)
17802 Sky Park Circle, Suite 205
Irvine, CA 92614
Tel: 949-213-5199
Email: sunreborn@gmail.com
Attorney for Petitioner

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUOCHENG ZHANG,<br>Petitioner,<br>v.<br>FERETI SEMAIA, Warden of Adelanto ICE Processing Center;<br>ERNESTO SANTACRUZ, JR., Los Angeles Field Office Director, U.S. Immigration and Customs Enforcement;<br>DAVID J. VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement;<br>MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security,<br><br>Respondents. | Case No.: 5:26-CV-06032<br><br>**PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**<br><br>**IMMEDIATE RELEASE REQUESTED**<br><br>(Challenge to Detention Without Pre-Deprivation Notice or Hearing) |

## INTRODUCTION

1. Petitioner Luocheng Zhang is a 39-year-old citizen of the People's Republic of China who fears persecution there and has been pursuing asylum in the United States for more than three years. He was inspected and admitted at New York, New York on May 12, 2023 as a B-2 visitor. On September 8, 2023—while still within his authorized stay—he filed an affirmative asylum application (Form I-589) with U.S. Citizenship and Immigration Services ("USCIS"), which remains pending. USCIS later issued him employment authorization valid through March 26, 2029. Throughout, he lived openly in California at an address known to the Government.

2. On August 27, 2026, Petitioner went to Ontario International Airport, in San Bernardino County, to board a flight to Dallas, Texas. After he passed through the security checkpoint, a man in plain clothes approached him and spoke to him in English, which Petitioner does not understand. Petitioner saw no credentials. The man took hold of him; two more men arrived, grabbed him, took him to a stairwell, and handcuffed him. Only after he was walked outside and placed in an ICE vehicle did anyone show him identification. At no point did anyone explain, in a language he understands, who they were or why he was being seized.

3. Respondents took Petitioner to a local ICE office, fingerprinted him, and had him sign documents—among them, as Respondents' own Notice to Appear ("NTA") reflects, a "Request for Prompt Hearing" waiving the ten-day period before a first hearing. The NTA records that oral notice was given "in ENGLISH." Petitioner has been confined ever since and is now held at the Desert View Annex of the Adelanto ICE Processing Center (the "Desert View Facility") in Adelanto, California.

4. Respondents charge Petitioner only with remaining beyond his authorized stay, 8 U.S.C. § 1227(a)(1)(B), a ground that applies only to a noncitizen who was admitted. He is not subject to mandatory detention; his detention is discretionary under 8 U.S.C. § 1226(a). No statute compelled Respondents to seize him. They did

so as a matter of discretion, from a man who had lived at liberty in plain view for more than three years, without notice and without any hearing before a neutral decisionmaker.

5. On September 21, 2026—twenty-five days after the arrest—an Immigration Judge held a custody redetermination hearing and denied bond. The Immigration Judge found that Petitioner "met his burden of proof to establish that he is not a danger to the community," noted that the Department of Homeland Security ("DHS") "did not argue" otherwise, and found "no evidence of any criminal history in the record." The denial rested solely on flight risk, under a framework that placed the burden on Petitioner after he had already been jailed. That after-the-fact hearing could not cure a deprivation of liberty that occurred without process, and courts in this District have so held. *E.g.*, *Zhou v. Janecha*, No. 5:26-cv-04167-DTB, Dkt. 10 at 12–14 (C.D. Cal. Aug. 14, 2026) (attached as Ex. J); *Mikayelyan v. Giles*, No. 5:26-cv-01035-SSS-DFM, Dkt. 19 at 3–4 (C.D. Cal. May 20, 2026) (attached as Ex. K).

6. Petitioner asks the Court to issue the writ and order his release on reasonable conditions of supervision, and to bar re-detention absent notice and a pre-deprivation hearing. He does not ask the Court to order another bond hearing, and he does not ask this Court to decide the merits of his asylum claim.

## JURISDICTION AND VENUE

7. This Court has habeas jurisdiction under 28 U.S.C. § 2241(c)(3) and federal-question jurisdiction under 28 U.S.C. § 1331, and the Suspension Clause, U.S. Const. art. I, § 9, cl. 2, guarantees the availability of the writ. The Court may grant declaratory relief under 28 U.S.C. §§ 2201–02 and may issue all orders necessary or appropriate in aid of its jurisdiction under the All Writs Act, 28 U.S.C. § 1651. Federal courts have jurisdiction under § 2241 to review the lawfulness of immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001); *Demore v. Kim*, 538 U.S. 510, 516–17 (2003).

8. This Petition challenges only the lawfulness of Petitioner's custody. It does not challenge a final order of removal (none exists), a decision to commence proceedings, or the merits of any relief application, so the jurisdiction-channeling provisions of 8 U.S.C. § 1252 do not apply. *See Jennings v. Rodriguez*, 583 U.S. 281, 292–95 (2018) (plurality opinion). Nor does 8 U.S.C. § 1226(e) bar review: Petitioner does not challenge the Immigration Judge's discretionary weighing of bond factors, but the antecedent constitutional violation of being seized without any process. *See Demore*, 538 U.S. at 516–17.

9. Venue is proper in this District. A habeas petition challenging present physical confinement is filed in the district of confinement and names the immediate custodian. *Rumsfeld v. Padilla*, 542 U.S. 426, 442–47 (2004). Petitioner is confined at the Desert View Facility in Adelanto, San Bernardino County, within this District, 28 U.S.C. §§ 84(c), 2241(a), and within the Court's Eastern Division. The arrest also occurred in San Bernardino County.

10. The Court must grant the writ or issue an order to show cause "forthwith," 28 U.S.C. § 2243, and habeas petitions are entitled to "special, preferential consideration to ensure expeditious hearing and determination." *Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000). "[T]he traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

## PARTIES

11. Petitioner Luocheng Zhang (A# 242-207-341) is a native and citizen of China. He is detained at the Desert View Facility, 10450 Rancho Road, Adelanto, California 92301.

12. Respondent Fereti Semaia is, on information and belief, the Warden of the Adelanto ICE Processing Center, the facility complex that includes the Desert View Facility where Petitioner is detained. He has immediate physical custody of Petitioner and is sued in his official capacity. *Padilla*, 542 U.S. at 435.

13. Respondent Ernesto Santacruz, Jr. is the Field Office Director of the Los Angeles Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement ("ICE"). He has authority over Petitioner's detention and custody determinations and is sued in his official capacity.

14. Respondent David J. Venturella is the Acting Director of ICE and is sued in his official capacity.

15. Respondent Markwayne Mullin is the Secretary of Homeland Security, whose department encompasses ICE and administers the immigration laws, 8 U.S.C. § 1103(a). He is sued in his official capacity.

## EXHAUSTION

16. No statute requires exhaustion before a noncitizen may seek habeas relief from immigration detention, and judicially created exhaustion is prudential. It is excused where administrative remedies are inadequate or not efficacious, pursuit of them would be futile, or irreparable injury would result. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017); *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

17. Petitioner has not appealed the Immigration Judge's September 21, 2026 custody order, which DHS also did not appeal; the appeal period runs through October 21, 2026. (Ex. E at 4; Ex. I.) Petitioner does not seek another custody hearing. He challenges the constitutionality of the seizure itself and asks for release.

18. Further exhaustion is excused. Exhaustion in this context is prudential, not jurisdictional, *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011), and each consideration that informs it—whether agency expertise is needed to develop the record, whether excusal would encourage deliberate bypass of the administrative scheme, and whether administrative review could correct the error and obviate judicial review, *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)—weighs against requiring it here. The constitutional injury alleged—seizure without pre-deprivation process—is one that neither the Immigration Judge nor the Board of Immigration

Appeals can adjudicate or remedy by ordering release; no agency expertise bears on it; and no bypass is at stake, because Petitioner already sought and received a custody redetermination and does not challenge its outcome. The most the agency can offer is another custody redetermination, which is more of the after-the-fact process that courts in this District hold insufficient. *Zaitsev v. Warden, Adelanto*, 2026 WL 1047942, at *7 (C.D. Cal. Apr. 15, 2026) (temporary restraining order), *petition dismissed as moot after release*, Dkt. 40 (May 8, 2026); *Zepeda Perez v. Santacruz*, 2026 WL 980492, at *5 (C.D. Cal. Apr. 9, 2026). Courts confronting this precise claim have excused exhaustion for these reasons. *Gagik T. v. Chestnut*, No. 1:26-cv-04337-MWJS, Dkt. 14 at 5–6 (E.D. Cal. June 25, 2026) (also available at 2026 WL 1837413) (excusing exhaustion because the claim "is a constitutional one beyond the agency's competence to resolve," even though the court had dismissed an earlier petition for failure to exhaust); *see Hernandez*, 872 F.3d at 988. A Board appeal would take months, during which Petitioner would remain confined, and each additional day of unlawful detention is irreparable harm.

## FACTUAL ALLEGATIONS

19. Petitioner was born in China in 1987. His language is Chinese. He requires an interpreter and could not understand what the officers said to him on August 27, 2026.

20. Petitioner was inspected and admitted to the United States at New York, New York on or about May 12, 2023 as a nonimmigrant visitor, with authorization to remain until November 11, 2023. (Ex. D (NTA) at 1.)

21. USCIS received Petitioner's Form I-589, Application for Asylum and for Withholding of Removal, on September 8, 2023—within his authorized stay and within one year of arrival—and issued a receipt notice (No. LGL2390072749) dated September 19, 2023. (Ex. A.) The application remains pending.

22. USCIS received Petitioner's Form I-765, Application for Employment Authorization, on January 29, 2024 (Receipt No. IOE0924113544) (Ex. C), and issued him an Employment Authorization Document, category C08, valid from March 27, 2024 through March 26, 2029. (Ex. B.)

23. USCIS directed its notices to Petitioner at 13226 Tracy Street, Baldwin Park, California 91706. (Exs. A, C.) Respondents thus knew Petitioner's identity, location, asylum filing, and work authorization for years.

24. Petitioner is engaged to be married to a United States citizen. (Ex. F ¶ 13.) His fiancée testified in support of his release at the September 21, 2026 custody hearing, and the Immigration Judge acknowledged her. (Ex. E at 2.)

25. Petitioner has no criminal history in the United States. On information and belief, before August 27, 2026, DHS had never taken him into custody.

26. On the morning of August 27, 2026, Petitioner went to Ontario International Airport to board a domestic flight to Dallas, Texas, where he planned to visit a friend before returning to California. (Ex. F ¶ 9.) After he cleared the security checkpoint and while he was walking toward his gate, a man in plain clothes approached him and spoke to him in English. Petitioner did not understand what was said. The man did not show any credentials.

27. The man took hold of Petitioner. Two more men arrived, seized him by the arms, and took him to a stairwell, where they handcuffed him. They walked him down the stairs and outside, where Petitioner saw ICE vehicles. Only then did anyone show him identification.

28. On information and belief, no judicial warrant authorized the arrest, and no neutral decisionmaker reviewed the decision to arrest Petitioner before it was made. On information and belief, no administrative warrant was shown to Petitioner at the scene.

29. Respondents drove Petitioner to a local ICE office, took his fingerprints, and had him sign documents. No one interpreted for him, and no one explained, in a language he understands, why he had been seized or what he was signing. (Ex. D at 1, 3; Ex. F ¶¶ 10–12.)

30. An NTA dated August 27, 2026 was served on Petitioner in person that day. It charges that he was admitted as a nonimmigrant visitor and removable under 8 U.S.C. § 1227(a)(1)(B). It records that Petitioner was given oral notice of the hearing and its consequences "in ENGLISH." A "Request for Prompt Hearing" bearing his signature waives his right to a ten-day period before appearing and requests a prompt hearing. The first hearing was set for September 8, 2026, before the Adelanto Immigration Court. (Ex. D.) Because of his limited English, Petitioner did not understand what he was signing.

31. Petitioner has been in ICE custody continuously since August 27, 2026—more than six weeks as of the date of this Petition—and is held at the Desert View Facility.

32. Petitioner also has a documented lumbar spine condition that predates his detention. On November 10, 2025, his treating physician diagnosed lumbar radiculopathy and prescribed medication and imaging. (Ex. H.) An MRI taken on August 26, 2026—the day before his arrest—shows a 6.8 mm posterior disc bulge at L4-5 with impingement of the L5 nerve roots and a narrowed spinal canal. (Ex. G.) Petitioner states that on his first day in custody a physician recommended surgery. As of the date of this Petition no surgery or specialist evaluation has been scheduled; he receives only pain medication, and he walks bent to one side. (Ex. F ¶ 17.)

33. Through counsel, Petitioner moved for a custody redetermination on September 8, 2026. The Adelanto Immigration Court held a hearing on September 21, 2026. Petitioner's fiancée testified. (Ex. E.) (The hearing, noticed for September 22, 2026, went forward on September 21, 2026. Ex. E at 1, 4–5.)

34. Immigration Judge Nicole Wells denied bond. She stated that the proceeding was conducted pursuant to § 236(a), and found: "The Court finds the respondent met his burden of proof to establish that he is not a danger to the community. The Department of Homeland Security did not argue the respondent is a danger to the community. There is no evidence of any criminal history in the record." (Ex. E at 1.)

35. The Immigration Judge denied bond solely on flight risk. She found that Petitioner lacks significant family ties (acknowledging his fiancée but finding that a fiancée he "plans to marry" does not establish significant family ties), lacks community ties and evidence of employment in the record, has relief she deemed "speculative" because no copy of the Form I-589 was filed, provided no financial records for his sponsor, and has resided in the United States only since May 2023. She also found that Petitioner "did provide a fixed address," "that he does have a sponsor," that he "lawfully entered the United States," and that he "timely filed a Form I-589." (Ex. E at 2–4.)

36. None of those findings rested on any failure to appear, violation of any condition, or criminal conduct. The factors weighed against Petitioner reflect the record that could be assembled within twenty-five days from a detention facility, with the burden of proof placed on him and without a hearing before he was taken into custody. Petitioner submits with this Petition additional evidence of his ties and stability that was not before the Immigration Judge. (Ex. F.)

37. DHS waived appeal. Petitioner has not appealed. His next master calendar hearing is set for October 14, 2026 at 8:30 a.m., by WebEx, before Immigration Judge James F. Polivka. (Ex. I.)

## **LEGAL FRAMEWORK**

38. Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed," and authorizes release on bond or conditional parole. 8

U.S.C. § 1226(a). A noncitizen detained under § 1226(a) may seek a custody redetermination before an Immigration Judge, 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1), at which the noncitizen bears the burden. *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006).

39. Petitioner was admitted and is charged under § 1227(a)(1)(B). The Immigration Judge treated his custody as arising under § 236(a). Neither 8 U.S.C. § 1225(b) nor § 1226(c) applies. The Government's discretion under § 1226(a) "is always constrained by the requirements of due process." *Hernandez*, 872 F.3d at 981.

## CLAIM ONE FOR RELIEF

### Fifth Amendment Procedural Due Process – Seizure Without Pre-Deprivation Notice or Hearing

40. Petitioner incorporates paragraphs 1 through 39.

41. The Due Process Clause protects "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent," *Zadvydas*, 533 U.S. at 693, and "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Id.* at 690.

42. "[T]he root requirement of the Due Process Clause" is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citation omitted); *see Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Post-deprivation process suffices only in "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event," *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993) (citation omitted), such as the "necessity of quick action" or the "impracticality of providing any predeprivation process." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982).

43. Petitioner holds a protected liberty interest in remaining at liberty. Where the Government, knowing a person's identity and location, chooses not to detain him while it processes his applications, the person acquires a substantial interest in continued liberty. *Zhou*, Dkt. 10 at 9–12 (finding substantial liberty interest where noncitizen entered on a visitor visa, applied for relief, lived at a known address, and the Government "continuously elected not to detain" her); *Gagik T.*, Dkt. 14 at 6–8 (ordering release of a visitor-visa entrant whose affirmative asylum application had been pending for six years, who held work authorization, and who had never been detained, because the Government's "course of conduct over six years, taken as a whole, reflected a sustained decision to permit Petitioner's liberty, and it is that decision that gives rise to the interest the Due Process Clause protects"); *Kharitonova v. Albarran*, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) ("Although the government did not detain and then release her, it made a decision not to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained."); *Kharitonova v. Albarran*, No. 3:26-cv-01362-JSC, Dkt. 19 at 3–4 (N.D. Cal. Sept. 8, 2026) (granting petition of never-detained asylum applicant) (attached as Ex. L); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969–70 (N.D. Cal. 2019). Petitioner was admitted, timely applied for asylum, obtained work authorization valid through 2029, kept an address on file with USCIS, and was never detained in more than three years. His case is indistinguishable from *Gagik T.* and *Zhou*.

44. The *Mathews* factors confirm that process was due before the seizure. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *First*, the private interest is at its maximum. Freedom from detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Liberty allowed Petitioner to pursue his asylum claim, work lawfully, and "form the other enduring attachments of

normal life." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). He is engaged to be married to a United States citizen.

45. *Second*, the risk of erroneous deprivation is high, and pre-deprivation safeguards would greatly reduce it. Where a person has received no hearing or other process before his liberty is taken, "the risk of an erroneous deprivation [of liberty] is high." *Zhou*, Dkt. 10 at 12 (quoting *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025)). Here no one reviewed the decision to arrest Petitioner, and the encounter was marked by a complete language barrier: no interpreter, no explanation he could understand, and a signed waiver of a statutory waiting period. Had Petitioner been heard beforehand—with the Government bearing the burden—he could have presented his lawful admission, timely asylum application, work authorization, fixed address, and family ties from a position of liberty.

46. *Third*, the Government's interest in seizing Petitioner without prior process is low. Civil immigration detention is nonpunitive; its only legitimate purposes are preventing danger and securing appearance. *Zadvydas*, 533 U.S. at 690. The Immigration Judge found Petitioner not a danger, and DHS did not argue otherwise. Respondents already had his address, his asylum filing, and his work-authorization record. Respondents identified no exigency; "[i]f the government wishes to re-arrest [a person] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega*, 415 F. Supp. 3d at 970; *accord Zhou*, Dkt. 10 at 13. Petitioner's domestic travel was no exigency. The manner of the arrest—plain-clothes officers waiting for him beyond the security checkpoint of a domestic flight—shows that Respondents planned it in advance and could as easily have given him notice and a hearing before taking his liberty.

47. The September 21, 2026 bond hearing did not cure the violation. "[A] post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing." *Mikayelyan*, Dkt. 19 at 3

(quoting *Zaitsev*, 2026 WL 1047942, at *7, in turn quoting *Gudavasov v. Marin*, No. 5:26-cv-00541-AH-MBK, 2026 WL 712827, at *3 (C.D. Cal. Mar. 9, 2026)); *accord Zepeda Perez*, 2026 WL 980492, at *5; *Hasratyan v. Bondi*, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026), *judgment entered*, Dkt. 23 (May 1, 2026); *Gagik T.*, Dkt. 14 at 9 ("When pre-deprivation process is both feasible and required, a later post-deprivation hearing does not cure the constitutional defect."); *E.A.T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025). In *Zhou* and *Gagik T.*, the courts granted the writ and ordered release even though an Immigration Judge had already denied bond. *Zhou*, Dkt. 10 at 12–14; *Gagik T.*, Dkt. 14 at 9–11. The hearing here placed the burden on Petitioner, and the circumstances weighed against him—that he was detained, with limited ability to gather and present evidence—were themselves products of the seizure.

48. *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), does not hold otherwise. It addressed what additional process due process requires at a later bond hearing for a person detained under § 1226(a) who had already received an initial hearing. It did not address the distinct claim presented here: that a person living at liberty with the Government's knowledge may not be seized without any notice or hearing at all. *Gagik T.*, Dkt. 14 at 8 (*Rodriguez Diaz* "did not consider whether the Government may seize a person after years of government-sanctioned liberty without affording any prior process").

49. Because Petitioner was detained without the process due, the appropriate remedy is to restore him to the position he would have occupied absent the violation: release. *Zhou*, Dkt. 10 at 13–14; *Gagik T.*, Dkt. 14 at 9–11; *E.A.T.-B.*, 795 F. Supp. 3d at 1324. Petitioner was subject to no conditions before his arrest; he asks to be released on reasonable, individualized, non-monetary conditions of supervision, and that Respondents be barred from re-detaining him absent notice and a pre-deprivation hearing before a neutral decisionmaker.

## **CLAIM TWO FOR RELIEF**

### **Fifth Amendment Substantive Due Process – Detention Not Reasonably Related to a Permissible Purpose**

50. Petitioner incorporates paragraphs 1 through 49.

51. Civil immigration detention violates substantive due process unless it bears a reasonable relation to its only permissible purposes: protecting the community from danger and ensuring the person's appearance. *Zadvydas*, 533 U.S. at 690.

52. Neither purpose supports Petitioner's detention. As to danger, the Immigration Judge found that Petitioner is not a danger and DHS did not argue otherwise. As to appearance, Petitioner is the one who initiated the process by applying for asylum within his authorized stay; he has every incentive to appear and prosecute that claim, which is his only path to remain in the United States. He holds work authorization through 2029, kept a known address, and is engaged to be married to a United States citizen, who testified on his behalf. The only basis for the flight-risk finding was a record gap, not any conduct. Continued detention also causes ongoing, irreparable harm: Petitioner has a diagnosed nerve-impinging disc condition for which a physician recommended surgery, and he has received nothing but pain medication. (Exs. G, H; Ex. F ¶ 17.)

53. Detention that serves neither purpose is punitive and violates the Due Process Clause. The Court should grant the writ and order Petitioner's release.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

A. Assume jurisdiction over this Petition under 28 U.S.C. § 2241;

B. Pursuant to 28 U.S.C. § 2243 and General Order No. 26-05 of this Court, issue an order to show cause forthwith, require Respondents to file a return on the expedited schedule provided by that General Order or such shorter schedule as the Court deems appropriate, and decide this Petition on an expedited basis;

C. Declare that Petitioner's seizure and detention without pre-deprivation notice and a hearing before a neutral decisionmaker violate the Due Process Clause of the Fifth Amendment;

D. Issue a writ of habeas corpus directing Respondents to release Petitioner from physical custody immediately, on reasonable, individualized, non-monetary conditions of supervision and without a monetary bond; and direct that, upon release, Respondents return to Petitioner all personal documents and property taken from him at or after his arrest, including identification, immigration, and travel documents and any telephone;

E. Order that, once released, Petitioner shall not be re-detained absent lawful authority and constitutionally adequate process, including advance notice and a hearing before a neutral decisionmaker at which the Government must justify detention by clear and convincing evidence of danger or flight risk;

F. Order Respondents to preserve the Form I-213, any Form I-200 or other warrant (with records of when and how it was served), Form I-286, any individualized risk assessment, communications concerning Petitioner's travel or arrest, any interpreter records, and any surveillance or body-worn camera recordings of the August 27, 2026 arrest, and to produce them to Petitioner's counsel to the extent the Court deems necessary to adjudicate this Petition;

G. Order that, consistent with General Order No. 26-05, Respondents shall not transfer Petitioner outside this District during the pendency of this action without at least 72 hours' advance notice to counsel and the Court and an opportunity to be heard, except in a medical emergency;

H. Award reasonable attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

I. Grant such other and further relief as the Court deems just and proper.

Dated: October 13, 2026

Respectfully submitted,

/s/ Xin Tian

Xin Tian, Esq.

Attorney for Petitioner

## VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I am submitting this verification on behalf of Petitioner as his attorney. I have discussed with Petitioner in Chinese the events described in this Petition. On the basis of those discussions and my review of the documents in his immigration record, I verify that the factual statements in this Petition concerning Petitioner are true and correct to the best of my knowledge, information, and belief. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on October 13, 2026, in Irvine, California.

/s/ Xin Tian
Xin Tian, Esq.
Attorney for Petitioner

# INDEX OF EXHIBITS

Ex. A — Form I-797C, Receipt Notice, Form I-589 (received Sept. 8, 2023; Receipt No. LGL2390072749)

Ex. B — Employment Authorization Document, category C08, valid Mar. 27, 2024 – Mar. 26, 2029 (front; date of birth redacted)

Ex. C — Form I-797C, Form I-765 (received Jan. 29, 2024; Receipt No. IOE0924113544)

Ex. D — Notice to Appear (Form I-862) served Aug. 27, 2026, with Request for Prompt Hearing (Event No. SBD2608000240)

Ex. E — Order of the Immigration Judge denying custody redetermination (Sept. 21, 2026), with Notice of Custody Redetermination Hearing

Ex. F — Declaration of Petitioner (Chinese original, English translation, and Certificate of Translation)

Ex. G — MRI report, lumbar spine, exam date Aug. 26, 2026 (Sun Imaging / Advanced Radiology Medical Group), impression signed Aug. 31, 2026 (date of birth redacted)

Ex. H — Office visit note, Jyh C. Chang, M.D., Nov. 10, 2025 (lumbar radiculopathy) (date of birth and patient identifiers redacted)

Ex. I — EOIR Automated Case Information for A# 242-207-341, printed Oct. 12, 2026 (next master hearing Oct. 14, 2026; no appeal received)

Ex. J — *Zhou v. Janecha*, No. 5:26-cv-04167-DTB, Dkt. 10, Order Granting Petition for Writ of Habeas Corpus (C.D. Cal. Aug. 14, 2026) (unpublished)

Ex. K — *Mikayelyan v. Giles*, No. 5:26-cv-01035-SSS-DFM, Dkt. 19, Order Granting Petition for Writ of Habeas Corpus (C.D. Cal. May 20, 2026) (unpublished)

Ex. L — *Kharitonova v. Albarran*, No. 3:26-cv-01362-JSC, Dkt. 19, Order Granting Petition for Writ of Habeas Corpus (N.D. Cal. Sept. 8, 2026) (unpublished)